**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

TAMMY WATKINS, et al.,

        Defendants.

FILED

05 DEC 12 AM 11:22

U.S. DISTRICT COURT
W/D/NY ROCHESTER

REPORT AND
RECOMMENDATION
04-CR-6177

## Preliminary Statement

Currently before the Court are motions by defendant Tammy Watkins (hereinafter Watkins) to suppress statements and two identification procedures. (Docket #26). The Government has filed papers in opposition to the motions. (Docket #29). A suppression hearing was commenced on May 11, 2005 and continued on June 20, 2005 and July 29, 2005. By Order of Judge David G. Larimer, dated January 11, 2005, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. §636(b)(1)(A)-(B). (Docket #12). The following is my Report and Recommendation as to the defendant's suppression motions.

## Factual Background

The testimony adduced at the suppression hearings concerned two suppression motions made by Watkins: (1) suppression of any statements Watkins made to the police on the day of her arrest and (2) suppression of the results of identification procedures used by

law enforcement in which Watkins was identified by third party witnesses.

1. <u>Watkins Arrest and Interrogation</u>: On January 18, 2005, Defendant Tammy Watkins' car was involved in an accident at the Parkridge Hospital in Greece, New York. <u>See</u> Transcript of May 11, 2005 Suppression Hearing [hereinafter "T1"] at 9 (Docket #54). When Officer Mark Dobner of the Town of Greece Police Department arrived at the accident scene, he ran a check of Ms. Watkins' license plate, and learned that she had an outstanding federal arrest warrant. (T1 at 9-10); <u>see also</u> Transcript of June 20, 2005 Suppression Hearing [hereinafter "T2"] at 4-5 (Docket #64). Officer Dobner arrested Ms. Watkins and notified Special Agent Robert Kelley of the Bureau of Alcohol, Tobacco and Firearms ("ATF"). (T1 at 8; T2 at 6). At approximately 11:00 a.m., Agent Kelley and Special Agent Christopher Robinson of the ATF met Officer Dobner at the junction of Interstates 490 and 390 and took Ms. Watkins into federal custody along with a bag of medications in her possession. (T1 at 9-11, 48, 54-55, 65; T2 at 7). During the drive to the federal building, Agent Kelley inquired whether Ms. Watkins needed any medical attention. (T1 at 11). Ms. Watkins declined the offer, but stated that she had diabetes and would need to take insulin which she did not have with her at that time. (T1 at 12, 14, 70).

Once at the federal building, Agent Kelley brought Ms. Watkins to a conference room at the U.S. Attorney's Office and removed her

handcuffs. (T1 at 13). Ms. Watkins called her boyfriend to ask him to bring her insulin, but she could not reach him. (T1 at 14, 65). Agent Kelley then advised Ms. Watkins of her Miranda rights, both verbally and by showing her the written form. (T1 at 15-18); see Government's Exhibit #1. Ms. Watkins told Agent Kelley that she understand her rights and agreed to waive them. (T1 at 15-16). Ms. Watkins signed the waiver of rights form and Agent Robinson witnessed her signature. (T1 at 20-21). Agent Kelley's interview of Ms. Watkins lasted approximately forty minutes, during which time Ms. Watkins never requested an attorney. (T1 at 20-21, 59). When the interview concluded, Agent Kelley told Ms. Watkins that she had a 2:30 p.m. arraignment scheduled and that in the meantime, he would keep trying to contact her boyfriend to bring her insulin. (T1 at 23).

The defense presented two witnesses at the suppression hearings: (1) Watkins and (2) her boyfriend Torres Ficklin. Watkins testified that she went to Parkridge Hospital on the morning of January 18, 2005 to have some x-rays taken and that her doctor instructed her not to take any medication, including insulin, before her appointment. (T1 at 75-78, 82). Ms. Watkins testified that she was diagnosed with Type 2 diabetes in 2001 and that if she does not take insulin to stabilize her blood sugar, she has "shaky spells" and occasionally "blackouts." (T1 at 76-77). She arrived at Parkridge Hospital at approximately 9:30 a.m. and her boyfriend

dropped her off at the entrance. (T1 at 82). According to Ms. Watkins, when she left the hospital after her procedures, she felt tired, hungry, nauseous, dizzy and shaky. (T1 at 83). As she approached the car, she saw that the police were there. (T1 at 83). The police told her that her car had been involved in an accident and that there was a warrant for her arrest. (T1 at 83-84). Ms. Watkins stated that she was taken into custody by the police, but denied having any medication with her that morning. (T1 at 85-86). Ms. Watkins confirmed that she was taken to the junction of Interstates 490 and 390 where she was taken into federal custody by Agent Kelley and Agent Robinson. (T1 at 87-88). On the ride to the federal building the agents advised her of the charges against her, but Ms. Watkins told them that it must be a mistake. (T1 at 89, 91). Ms. Watkins confirmed that at the federal building she was advised of her <u>Miranda</u> rights, which she understood, and that she signed a form waiving them. (T1 at 95, 104). Ms. Watkins stated that after she was questioned for approximately 45 minutes, Agent Kelley brought her some of her medication. (T1 99). Ms. Watkins also testified that she waived her <u>Miranda</u> rights and spoke with the agents because "I felt like I had nothing to hide. I felt like I was talking to people that were looking for the truth." (T1 at 108). She further testified that "[n]o promises were made. I was just told that there was already people making plea deals." (T1 at 109).

4

Ms. Watkins' boyfriend, Torres Ficklin, confirmed driving with Ms. Watkins to Parkridge Hospital on the morning of January 18, 2005. (T2 at 21). He testified that while Ms. Watkins was inside, he got into a car accident in the parking lot and that the police arrived shortly thereafter. (T2 at 22). He testified that the officers told Ms. Watkins that there was a warrant for her arrest and that they took her into custody without her medication. (T2 at 22-25). Later in the day, Mr. Ficklin received a call from Ms. Watkins to bring her medication to the federal building, which he did. (T2 at 25).

2. The Identification Procedures: Special Agent John Hayes of the ATF testified that on November 17, 2004, he showed a photo array containing Tammy Watkins' photograph to a witness. See Transcript of July 29, 2005 Suppression Hearing [hereinafter "T3"] at 3 (Docket #63); see also Government's Exhibit #2. The array was shown to the witness in a conference room at the United States Attorney's Office in the Rochester Federal Building. Present for the display were Agent Hayes, Investigator Scott Deming, and Assistant U.S. Attorney Rodriguez. (T3 at 4). According to Agent Hayes, he asked the witness if he/she recognized any of the six photographs. The witness responded by identifying photograph #5 as "Tammy" and stated that she was involved in making a trip to Houston, Texas to pick up cocaine and bring it back to Rochester. (T3 at 5). The witness circled the number 5, wrote "Tammy" over the photograph and signed

5

the form.  (T3 at 5-6).

Agent Hayes testified that he showed the same photo array to another witness on April 27, 2005.  (T3 at 6); see Government's Exhibit #3.  The array was shown to the witness at the United States Attorney's Office, and Agent Hayes and Officer Ed Bernabei were present during the viewing. (T3 at 8).  Agent Hayes asked whether the witness recognized any of the six photographs and the witness identified photograph #5 as "Tammy" and stated that photograph #1 "looked like Moeniesha."  (T3 at 8).  The witness circled the numbers of those photographs and wrote the names above them.  (T3 at 9).  Then the witness signed the bottom of the photo array.  (T3 at 8).  Agent Hayes testified that no one in the room at either viewing suggested or indicated to the witness in any way which photograph they should choose.  (T3 at 6, 9).

## Discussion

1. <u>Watkins' Statements</u>: Oddly, neither the prosecution nor defense counsel has specified what statements of Ms. Watkins are at issue in terms of being subject to suppression.  Nevertheless, I find that any statements Ms. Watkins made to the police on January 18, 2005 were properly obtained and should be admissible at Watkins' trial.  As to any statements Ms. Watkins made <u>prior</u> to being given <u>Miranda</u> warnings and that were disclosed during the suppression hearings, I find such oral statements to be spontaneous and not in

6

response to any interrogation by law enforcement. See <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980) (volunteered statements are admissible in evidence and are not subject to <u>Miranda</u> safeguards).

As to Watkins' statements at the federal building, it is undisputed that <u>Miranda</u> warnings were given before she was questioned, that Ms. Watkins understood these warnings, voluntarily waived them, and never requested an attorney. Indeed, far from being coerced, Ms. Watkins testified that she wanted to speak to the agents because other defendants were receiving plea deals and she felt that she had "nothing to hide." Accordingly, Ms. Watkins' post-<u>Miranda</u> statements should also be admissible. <u>Nova v. Bartlett</u>, 211 F.3d 705, 708 (2d Cir. 2000)(confession made post-<u>Miranda</u> admissible at trial).

For these reasons, it is my Report and Recommendation that Ms. Watkins' motion to suppress her January 18, 2005 statements should be **denied.**

    2. <u>The Photo-Arrays</u>: Watkins' motion to suppress the two identifications made of her by witnesses viewing a photo-array should likewise be denied. At the hearing, defense counsel argued that the identification procedure was flawed because there were "dissimilarities" between Ms. Watkins and the others pictured in the photo array that rendered it inherently suggestive.

The Due Process Clause of the Fifth Amendment entitles individuals accused of crimes to protection against the use of

7

evidence derived from unreliable identification procedures, including photographic displays. Moore v. Illinois, 434 U.S. 220, 227 (1977); Dunnigan v. Keane, 137 F.3d 117, 128 (2d Cir. 1998). In general, a pretrial photographic identification procedure violates due process if the procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Curry v. Burge, 2004 WL 2601681, *20 (S.D.N.Y. Nov. 17, 2004), quoting Simmons v. United States, 390 U.S. 377, 384 (1968).

Having examined the photographic array used in both identification procedures, I find that it is not impermissibly suggestive. Indeed, most of the women pictured in the array have characteristics similar to Ms. Watkins in terms of race, age, hair color and length. See United States v. Thai, 29 F.3d 785, 808-809 (2d Cir. 1994)(where photo array contained people of the same sex, race, hair color and approximate age, the array was not unduly suggestive). Moreover, defense counsel's argument that the minor differences in the photographs with regard to hairstyle and jewelry cause the array to be impermissibly suggestive is unpersuasive. See, e.g., United States v. Gibson, 135 F.3d 257, 260 (2d Cir. 1998)(even if defendant's picture was the only one in the array with a goatee, Court found it would not be unduly suggestive); United States v. Taveras, 1995 WL 600860, *6-7 (S.D.N.Y. Oct. 11, 1995)(even though defendant was the only partially bald person in

the photo array, it was not unduly suggestive).

Finally, as the Court in Taveras noted, the "principal question is whether the picture of the accused, *matching descriptions given by the witness*, so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit." Id. at *5 (internal quotations and citations omitted)(emphasis in original). Here, as in Taveras, there is no evidence that either identifying witness provided law enforcement officers with any prior description of Tammy Watkins, thus, there is no basis to believe that any minor differences in the photographs contributed to their identification of her.

Accordingly, it is my Report and Recommendation that Tammy Watkins' motion to suppress the results of the pretrial identification procedures be **denied**.

## Conclusion

Based on the foregoing, it is my Report and Recommendation that Defendant Watkins' motions to suppress be **denied**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: December 12, 2005
       Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R. Civ.P. 72(b) and Local Rule 72.3(a)(3).[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.
**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: December 12, 2005
Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. §3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).

10